## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL GREENWOOD, individually and on behalf of all others similarly situated, | CIVIL ACTION No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| POWER BALANCE LLC, | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff Michael Greenwood ("Plaintiff"), individually and on behalf of the Plaintiff Class described below, brings this action against Defendant Power Balance, LLC ("Defendant"), and alleges, based upon personal knowledge as to his own actions, and upon information and belief as to the actions of others, as follows:

### I.
### NATURE OF THE CASE

1.      Plaintiff brings this action to redress Defendant's false, deceptive, and unfair advertising of Power Balance wristbands, pendants, necklaces, and other jewelry containing holograms (collectively, "Power Balance Accessories").

2.      Since Defendant began selling its Power Balance Accessories in 2007, it has made millions of dollars by labeling and advertising Power Balance Accessories as products that improve the balance, strength, and flexibility of those who wear them.

3.      However, that claim is deceptive, fraudulent, and unfair because it is entirely unsubstantiated.  There is no credible scientific evidence that supports that claim, as Defendant has known all along.  Indeed, Defendant's Australian subsidiary recently admitted in a public statement that there is no credible scientific evidence supporting the claims that Power Balance

Accessories improve the balance, strength, and flexibility of those who wear them.

4.      Power Balance Accessories are, in fact, ineffective and do not improve the balance, strength, and flexibility of those who wear them, as Defendant has known all along.

5.      This lawsuit seeks, *inter alia*, compensatory damages for injuries sustained by Plaintiff and other Florida residents who purchased Power Balance Accessories (the "Plaintiff Class"), disgorgement of Defendant's profits from sales of Power Balance Accessories, punitive damages, attorneys' fees, and the costs of this suit.

## II.
## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000, exclusive of costs and interest, there is diversity of citizenship between Defendant and at least one member of the Plaintiff Class, including Plaintiff, and the Plaintiff Class consists of at least one hundred members.

7.      Venue is proper in this District under U.S.C. § 1391(a)(1) because Defendant resides in this District.  Defendant resides in this District for purposes of 28 U.S.C. § 1391 because it is subject to personal jurisdiction in this District.

8.      Defendant is subject to general personal jurisdiction in this District because it has continuous and systematic contacts with the State of Florida and this District at the time of the filing of this action through its marketing and advertising of Power Balance Accessories in this District to residents of this District, distributing Power Balance Accessories to retail outlets in this District, and selling Power Balance Accessories directly to residents of this District through its website www.powerbalance.com.  Defendant has personally availed itself of doing business in Florida and this District under the protection of the laws of Florida, and the exercise of

personal jurisdiction over Defendant in Florida and this District does not offend traditional notions of fair play and substantial justice.

## III.
## PARTIES

9.     Plaintiff Michael Greenwood is a citizen of Florida who resides in Delray Beach, Florida.

10.     Defendant is a Delaware limited liability company with its principal place of business located at 30012 Ivy Glenn, Suite 180, Laguna Niguel, California.

11.     At all relevant times, Defendant manufactured, marketed, advertised, distributed, and sold Power Balance Wristbands throughout the United States, including Florida and this District.

12.     At all relevant times, Defendant acted through its officer, employees, and agents, and the acts of its officers, employees, and agents were within the scope of their employment and agency.

## IV.
## SUBSTANTIVE ALLEGATIONS

13.     Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

14.     Since launching its Power Balance Accessories line in the beginning of 2007, Defendant has uniformly represented in its labeling and advertising that those products improve the balance, strength, and flexibility of those who wear them.  Defendant attributes the ability of Power Balance Accessories, which retail for $29.99 or more, to increase the balance, strength, and flexibility of those who wear them to the Mylar holograms in the products, which purportedly work and react with the human body's natural energy field to produce those benefits.

*Greenwood vs. Power Balance*
*Class Action Complaint*
*Page 4*

15.    Although Defendant has made and disseminated its claim that Power Balance Accessories improve the balance, strength, and flexibility of those who wear them in slightly different forms and through different media, the representation is always the same—consumer should purchase Power Balance Accessories because they improve the balance, strength, and flexibility of those who wear them.

16.    For example, the front of Defendant's product label for Power Balance silicone wristbands contains large, bold letters that state either "BALANCE•STRENGTH• FLEXIBILITY" or "**IMPROVED** BALANCE" "**GREATER** FLEXIBILITY" "**INCREASED CORE** STRENGTH":



*Greenwood vs. Power Balance*
*Class Action Complaint*
*Page 5*



17.   The back of Defendant's product label for Power Balance silicone wristbands claims: "POWER BALANCE® IS PERFORMANCE TECHNOLOGY.   Power Balance® holograms are embedded with frequencies that react positively with your body's natural energy field to improve balance, strength, and flexibility":



18.    Similarly, until recently, Defendant's website, www.powerbalance.com, stated that:

POWER BALANCE Performance Technology has been embedded with naturally occurring frequencies found in nature that have been known to react positively with the body's energy field. This helps to promote balance, flexibility, strength and overall wellness.

For thousands of years, eastern medicine has been using the same techniques for personal wellness through finding things in nature that react positively with your body, such as rocks, minerals, crystals, etc. Through kinesiology we have learned that certain focus cause the body to react either positively or negatively as well. Although all substances found in nature work the same on everyone, we have narrowed it down to a few that we believe are highly beneficial and have put them together to create Power Balance Performance Technology.

It's hard to argue with nature and the fact is that everything in nature resonates at a particular frequency. That is what keeps it all together. We react with frequency because we are a frequency. Most simply, we are a bunch of cells held together by frequency. If you hold processed sugar or a cell phone in your hand and hold your arm straight out to your side and have someone push your arm down while you resist, it goes down pretty easily because processed sugar and cellular telephones do not react positively with the human body. Basically, the frequencies in sugar and cell phones create a reaction that makes your body weaker. Adversely,

if you put certain vitamins or minerals in your hand and do the same test with your arm, you will find it is much harder for that person to push your arm down.  Your body's energy field likes things that are good for it and craves to be around those things.  At Power Balance, we have taken a few or those items and through advances in technology, have been able to duplicate those positive energies and imprint them onto our holographic media.

Why Holograms?  We use holograms because they are composed of Mylar—a polyester film used for imprinting music, movies, pictures, and other data.  Thus, it was a natural fit.  In fact, the hologram is so complex with such infinite depth and minimal surface area, that many companies are now using them as hard drives.  Along those same lines, we felt that it would be a lot easier to get someone to put a hologram in there [sic] shoe rather then [sic] a Power Balance equipped rock or apple.

19.    Recently, Defendant has toned down its website somewhat, but its claims remain deceptive, unfair, and fraudulent.  Defendant's website now states:

•WHAT IS POWER BALANCE?

Power Balance is Performance Technology designed to work with your body's natural energy field.  Founded by athletes, Power Balance is a favorite among elite athletes for whom balance, strength and flexibility are important.

•HOW DOES THE HOLOGRAM WORK?

Power Balance is based on the idea of optimizing the body's natural energy flow, similar to concepts behind many Eastern philosophies.  The hologram in Power Balance is designed to resonate with and respond to the natural energy field of the body.[1]

20.    Defendant has also made and disseminated its uniform claim that Power Balance Accessories improve the balance, strength, and flexibility of those who wear them through television commercials promoting the products.

21.    Defendant has also utilized the press to spread its deceptive, unfair, and fraudulent

---

[1]      http://www.powerbalance.com/powerbalance (last visited Jan. 19, 2011).

claim that Power Balance Accessories improve the balance, strength, and flexibility of those who wear them. For example, in a September 16, 2009 interview with Liz Miersch from the online blog "SELF," Keith Kato, the Co-Director, Co-Owner, President, and Chief Financial Officer of Defendant, advertised the Power Balance Accessories with a promise that wearing one would boost the body's self defense mechanisms creating the immediate benefits of strength, balance and flexibility gain.[2]

22.    Similarly, in a February 26, 2010 interview with Nima Zarrabi from the online basketball magazine "SLAM," Josh Rodarmel, the Co-Director, Co-Owner, and Chief Operating Officer of Defendant, stated, in relevant part:

> **SLAM:** "Can you discuss how these Power Balance products benefit the athletes or the weekend warrior?"
>
> **Josh Rodarmel:** "We put frequencies in the holograms that react positively with your body's energy field . . . . We figured out how to put these in the hologram so when it comes into contact with your body, it gives you that added balance, strength, flexibility. We can demonstrate that through the different muscle tests."
>
> **SLAM:** "How does this product specifically aid a Basketball player?"
>
> **Josh Rodarmel:** " . . . Lot's of endurance and stamina. There are obviously different balance and flexibility benefits that the elite athletes tend to notice more, rather than people like me that aren't very athletic and play for fun."
>
> **SLAM:** "What do you say to people who are skeptical?"
>
> **Josh Rodarmel:** "Everybody is skeptical when they first hear about it. They say it doesn't make sense and it has to be psychological. It's not."[3]

---

[2]       http://www.self.com/fitness/blogs/freshfitnesstips/2009/09/wacky-but-it-works-wednesday-p.html (last visited Jan. 19, 2011).

[3]       http://www.slamonline.com/online/nba/2010/02/power-balance-hits-the-nba/ (last visited Jan. 19, 2011).

23.    Yet, in December 2010, following an investigation by the Australian Competition and Consumer Commission ("ACCC"), Defendant's wholly owned Australian subsidiary, Power Balance Australia, agreed to withdraw its products from the Australian market, issue public retractions, and provide refunds to consumers who felt misled by Defendant's deceptive marketing practices.  The ACCC determined that:

> Power Balance Australia Pty Ltd claimed that their wristbands and pendants improve balance, strength and flexibility and worked positively with the body's natural energy field. It also marketed its products with the slogan "Performance Technology."   These claims made by Power Balance were not supported by any credible scientific evidence and therefore Power Balance has admitted that it has engaged in misleading and deceptive conduct in breach of s 52 of the Trade Practices Act 1974.[4]

24.    In a "Corrective Advertisement" that appears on the website of Power Balance Australia, a wholly owned subsidiary of Defendant, Power Balance Australia admits:

> In our advertising we stated that Power Balance wristbands improved your strength, balance and flexibility.
>
> We admit that there is no credible scientific evidence that supports our claims and therefore we engaged in misleading conduct in breach of s52 of the Trade Practices Act 1974.
>
> To obtain a refund please visit our website www.powerbalance.com.au or contact us toll-free on 1800 733 436
>
> This offer will be available until 30th June 2011.  To be eligible for a refund, together with return postage, you will need to return a genuine Power Balance product along with proof of purchase (including credit card records, store barcodes and receipts) from an authorized reseller in Australia.
>
> This Corrective Notice has been paid for by Power Balance Australia Pty Ltd and placed pursuant to an undertaking to the Australian Competition and Consumer Commission given under

---

[4]        http://www.accc.gov.au/content/index.phtml/itemId/964074?pageDefinitionItemId=16940 (last visited Jan. 19, 2011).

section 87B of the *Trade Practices Act, 1974*.[5]

25.    On or about December 23, 2010, the Italian Anti-Trust, Italian 3 counterpart of the Australian ACCC, issued a fine of 350,000 Euros against Defendant's wholly owned Italian subsidiary, based on the fact that the promises made in advertising and labeling for the Power Balance Accessories were wholly unsubstantiated.

26.    It is believed that Defendant modified its websites, marketing, and communications to eliminate numerous deceptive claims previously visible to the public, pending the ruling by the ACCC and while under investigation by the Italian Antitrust board.

27.    Moreover, it is believed that Defendant attempted to sanitize its publicly available information by employing specialized services, and removing several deceptive, unfair, and fraudulent statements from otherwise visible locations.

28.    Since before Defendant began manufacturing, marketing, distributing, and selling the Power Balance Accessories, Defendant has known that there is no credible scientific evidence that supports its claim that those products improve the balance, strength, and flexibility of those who wear them, and that those products, in fact, do not improve the balance, strength, and flexibility of those who wear them.

29.    At the very least, Defendant was reckless in disregarding and should in the exercise of reasonable care and diligence known that there is no credible scientific evidence its Power Balance Accessories, and that those products, in fact, do not improve the balance, strength, and flexibility of those who wear them.

30.    Nevertheless, Defendant continues to deceptively, unfairly, and fraudulently claim in its labeling and advertising that Power Balance Accessories improve the balance, strength, and

---

[5]      http://www.powerbalance.com/australia/CA (last visited Jan. 19, 2011).

flexibility of those who wear them.

31.     Defendant reportedly had revenue of $35 million in 2010, up from $5.6 million in 2009.

32.     In November, Plaintiff saw one of Defendant's television commercials for Power Balance Accessories that claimed that the products improve the balance, strength, and flexibility of those who wear them.  The commercial represented that Power Balance Accessories help those who wear them in all of those areas regardless of fitness of activity level.  The commercial also claimed that Power Balance Accessories would improve the well being, enhance clarity of thought, and improve stamina of those who wear them.

33.     On December 24, 2010, Plaintiff saw and read the product labeling for Power Balance wristbands at a Sport Authority retail store in Delray Beach, Florida.  Based on the representations made on the product labeling and during the television commercial he saw, Plaintiff purchased two Power Balance silicone wristbands, paying $29.99 plus tax for each one. Plaintiff would not have purchased those products if he had known that they are ineffective and do not improve the balance, strength, and flexibility of those who wear them.

## V.
## CLASS ACTION ALLEGATIONS

34.     Pursuant to Rule 23(b) and (c) of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on the behalf of the proposed Plaintiff Class.  Plaintiff seeks certification of a Plaintiff Class that consists of:

> All persons or entities domiciled or residing in the State of Florida who have purchased one or more Power Balance Accessories. Excluded from the class are Defendant, it officers, directors, employees, and agents.

35.     The Plaintiff Class is comprised of thousands of purchasers of Defendant's

products throughout the United States, making joinder impracticable.  The exact number of Plaintiff Class members is unknown, but their identity can easily be ascertained through Defendant's records and appropriate investigation and discovery.  The disposition of the numerous claims of the Plaintiff Class members in a single class action will provide substantial benefits to all parties and to the Court.

36.   There is a well-defined community of interest in the questions of law and fact involved affecting Plaintiff and the Plaintiff Class.  The questions of law and fact common to the Plaintiff Class predominate over questions affecting only individual members of the Plaintiff Class, and include, but are not limited to, the following:

a.   Whether Defendant's labeling and advertising of Power Balance Accessories is false, deceptive, misleading, unfair and/or unconscionable;

b.   Whether Defendants' labeling and marketing of its Power Balance Accessories violates Florida's Deceptive and Unfair Trade Practices Act;

c.   Whether Defendants' labeling and marketing of its Power Balance Accessories violates Fla. Stat. § 817.41(1);

d.   Whether Defendant breached the implied warranty of merchantability with respect to its Power Balance Accessories;

e.   Whether Defendant was unjustly enriched as a result of its false, deceptive, and unfair labeling and advertising of its Power Balance Accessories;

f.   Whether Defendant knew, or was reckless in not knowing, that its advertising of Power Balance Accessories was, and still is, false, deceptive, misleading, unfair, and/or unconscionable;

g.   Whether  Defendant's  false,  deceptive,  misleading,  unfair,  and/or

unconscionable labeling and advertising of its Power Balance Accessories proximately caused Plaintiff and the Plaintiff Class members to purchase those products; and

h.   Whether Plaintiff and the Plaintiff Class are entitled to compensatory damages;

i.   Whether Defendant should be required to disgorge its profits from its Power Balance Accessories to Plaintiff and the Plaintiff Class;

j.   Whether Plaintiff and the Plaintiff Class are entitled to punitive damages.

37.    Plaintiff asserts claims that are typical of the Plaintiff Class, having purchased two Power Balance Accessories as a result of Defendant's false, deceptive, and unfair advertising.   Plaintiff and the Plaintiff Class have similarly suffered harm arising from Defendant's deceptive and unfair methods of competition, practices, and acts alleged herein.

38.    Injuries sustained by Plaintiff and Plaintiff Class members flow, in each instance, from a common nucleus of operative facts—Defendant's false, deceptive, and unfair advertising of its Power Balance Accessories that Defendant carried out for the purpose of inducing Plaintiff and Plaintiff Class members to purchase those products.

39.    Plaintiff is an adequate representative of the Plaintiff Class because his interests do not conflict with and are not antagonistic to the interests of the Plaintiff Class members he seeks to represent.   Plaintiff will fairly and adequately represent and protect the interests of the Plaintiff Class.   Plaintiff has retained attorneys who are competent and experienced in the prosecution of class action litigation and other complex litigation.

40.    Plaintiff and the Plaintiff Class members have suffered substantial harm and damages due to Defendant's wrongful conduct.   A class action is superior to other methods for

the fair and efficient adjudication of the subject controversy.  Absent a class action, the proposed Plaintiff Class members will likely find the cost of litigating their individual claims to be prohibitive and will have no effective remedy at all.  Therefore, absent a class action, the proposed Plaintiff Class members' injuries will not be redressed and Defendant's misconduct will proceed without remedy.  Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Additionally, Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the Plaintiff Class, requiring Court imposition of uniform relief to insure compatible standards of conduct toward the Class.

41.     Notice can be provided to Plaintiff Class members via internet publication, in-store displays, and through the U.S. mail.

## VI.
## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

42.     Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

43.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (the "DUTPA").  The express purpose of the DUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

44.     Plaintiff and members of the Plaintiff Class are consumers as defined by Fla. Stat.

§ 501.203.

45.     Power Balance Accessories are goods within the meaning of the DUTPA.

46.     At all relevant times, Defendant has engaged in trade or commerce within the meaning of the DUTPA.

47.     Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

48.     Defendant's labeling and advertising of its Power Balance Accessories uniformly misrepresented that those products improve the balance, strength, and flexibility of those who wear them.

49.     At all relevant times, Defendant's above-described false, deceptive, and unfair labeling and advertising of its Power Balance Accessories was likely to misled a person acting reasonably in the circumstances in violation of Fla. Stat. § 500.04 and 21 U.S.C. §§ 331, 343.

50.     Defendant's above-described false, deceptive, and unfair labeling and advertising of Power Balance Accessories offends public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

51.     Defendant's above-described false, deceptive, and unfair labeling and advertising of Power Balance Accessories constitute unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of trade and commerce within the meaning of Fla. Stat. § 501.204(1).

52.     Defendant's uniform misrepresentation in its labeling and advertising of Power Balance Accessories that those products improve the balance, strength, and flexibility of those who wear them was material in that a reasonable person would attach importance to such

information and would be induced to act upon such information in deciding whether to purchase those products.  Reliance upon Defendant's that misrepresentation by Plaintiff and the Plaintiff Class members may therefore be presumed as a matter of law.  The materiality of that misrepresentation also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Plaintiff Class.

53.     By falsely, deceptively, and unfairly representing in its labeling and advertising that Power Balance Accessories improve the balance, strength, and flexibility of those who wear them, Defendant intended to induce Plaintiff and the Plaintiff Class members to purchase those products.

54.     Defendant has a duty to correct the misinformation it makes and disseminates through its labeling and advertising of its Power Balance Accessories.  By not informing Plaintiff and the Plaintiff Class members that Power Balance Accessories do not improve the balance, strength, and flexibility of those who wear them, Defendant breached that duty.  Defendant gained financially from and as a result of that breach in the form of the profits it made from the sale of Power Balance Accessories.

55.     Plaintiff and the Plaintiff Class have sustained actual damages in the form of the purchase price they paid for Power Balance Accessories as a direct and proximate result of Defendant's misleading advertisements of Power Balance Accessories because they would not have purchased those products if Defendant had not misrepresented in those advertisements that those products improve the balance, strength, and flexibility of those who wear them.

56.     Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of, Plaintiff and the Plaintiff Class.  Plaintiff and the Plaintiff Class are therefore entitled to punitive damages.

57.    Pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff, individually and on behalf of the Plaintiff Class, seeks an award of actual damages, attorneys' fees, and court costs.

## COUNT II
### MISLEADING ADVERTISING IN VIOLATION OF FLORIDA STATUTES § 817.41

58.    Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

59.    This cause of action is brought pursuant to Fla. Stat. § 817.41, which makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement."  Fla. Stat. § 817.41(1).

60.    Through its labeling and advertising of its Power Balance Accessories, Defendant made and disseminated statements uniformly representing that those products improve the balance, strength, and flexibility of those who wear them, as described more fully herein.

61.    Fla. Stat. § 817.40 defines misleading advertisements as:

> [A]ny statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

Fla. Stat. § 817.40(5).

62.    Defendant has violated Fla. Stat. § 871.41(1) because it knew or in the exercise or reasonable care or investigation could or might have ascertained that the statements representing that Power Balance Accessories improve the balance, strength, and flexibility of those who wear them, which were made and disseminated through Defendant labeling and advertising of those

products, was untrue and misleading.

63.    Plaintiff and the Plaintiff Class have sustained actual damages in the form of the purchase price they paid for Power Balance Accessories as a direct and proximate result of Defendant's misleading advertisements of Power Balance Accessories because they would not have purchased those products if Defendant had not misrepresented in those advertisements that those products improve the balance, strength, and flexibility of those who wear them.

64.    Pursuant to Fla. Stat. § 817.41(5), Plaintiff, individually and on behalf of the Plaintiff Class, seeks an award of actual damages, punitive damages, and costs, including attorneys' fees.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

65.    Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

66.    At all relevant times, Defendant manufactured, marketed, advertised, distributed, and sold Power Balance Accessories throughout the United States, including Florida.

67.    At all relevant times, Defendant was a merchant with respect to consumer products, including Power Balance Accessories.

68.    As a merchant with respect to those products, Defendant impliedly warranted to Plaintiff and the Plaintiff Class that Power Balance Accessories were merchantable, including that they were fit for the ordinary purposes for which such goods are used and that they passed without objection in the consumer product trade.

69.    Power Balance Accessories were unmerchantable at the time of their sale because they were unfit for their ordinary and intended purpose of improving the balance, strength, and flexibility of those who wear them due to the fact that they do not improve the balance, strength,

and flexibility of those who wear them.

70.     Power Balance Accessories were also unmerchantable at the time of their sale because they did not, and still do not, pass without objection in the consumer product trade due to the fact that they are ineffective and do not work as labeled and advertised by Defendant.

71.     Defendant therefore breached the implied warranty of merchantability with respect to Power Balance Accessories purchased by Plaintiff and the Plaintiff Class members.

72.     As alleged above, Defendant has always known or should have known that its Power Balance Accessories are ineffective and do not work as advertised by Defendant.

73.     Plaintiff and the Plaintiff Class members would not have purchased Power Balance Accessories if Defendant had not falsely, deceptively, and unfairly represented that those products improve the balance, strength, and flexibility of those who wear them.

74.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Plaintiff Class have suffered actual damages in the form of the purchase price they paid for Power Balance Accessories.

75.     Plaintiff demands judgment against Defendant for compensatory damages in an amount to be determined at trial, together with reasonable attorneys' fees and costs.

## COUNT IV
### UNJUST ENRICHMENT

76.     Plaintiff realleges and incorporates by reference each preceding paragraph as though set forth at length herein.

77.     In seeking to advertise and sell Power Balance Accessories to Plaintiff and the Plaintiff Class, Defendant engaged in unfair methods of competition and made deceptive and unfair representations and engaged in unfair methods of competition, as set forth above.

78.     Defendant has been unjustly enriched by reaping substantial profits from

payments Plaintiff and the Plaintiff Class members made for Power Balance Accessories as a result of Defendant's deceptive and unfair marketing and sales scheme.  Defendant's profits would have been reduced but for its wrongful and unlawful conduct alleged herein.

79.    In equity and good conscience, it would be unjust and inequitable to permit Defendant to retain the benefit it obtained from Plaintiff's and the Plaintiff Class members' purchases of Power Balance Accessories as a result of Defendant's wrongful and unlawful conduct.

80.    As a result of the wrongful conduct described above, Defendant was unjustly enriched under common law principles, and Plaintiff and the Plaintiff Class suffered actual damages for which Defendant is liable.

81.    Defendant's liability to Plaintiff and the proposed Class members for such damages should be measured by the extent of Defendant's unjust enrichment, including its unjustly acquired profits and other monetary benefits resulting from their wrongful conduct.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Plaintiff Class, respectfully requests that the Court order the following relief and enter judgment against Defendant as follows:

a.    An order certifying this matter as a class action with Plaintiff as representative of the Plaintiff Class, and designating Plaintiff's counsel as Plaintiff Class counsel;

b.    Judgment in favor of Plaintiff and the Plaintiff Class on Counts I-V, including but not limited to treble damages, punitive damages, attorneys' fees, filing fees, and costs of this action;

*Greenwood vs. Power Balance*
*Class Action Complaint*
*Page 21*

      c.    Pre-judgment and post-judgment interest; and

      d.    All other and further relief as the Court deems necessary, just, and proper.

**VIII.**
**DEMAND FOR JURY TRIAL**

Demand is hereby made for a trial by jury.

DATED: February 22, 2011           Respectfully submitted,

By: /s/ John B. Patterson
BALKAN & PATTERSON, LLP
John B. Patterson (Florida Bar No. 023930)
Adam M. Balkan (Florida Bar No. 044880)
601 South Federal Highway, Suite 302
Boca Raton, Florida 33432
Telephone: (561) 750-9191
Facsimile: (561) 750-1574
john@balkanandpatterson.com
adam@balkanandpatterson.com

BAILEY PERRIN BAIEY
Fletcher V. Trammell (Texas Bar No. 24042053)
440 Louisiana, Suite 2100
Houston, Texas 77002
Telephone: (713) 425-7100
Facsimile: (713) 425-7101
ftrammell@bpblaw.com
(*pro hac vice* admission will be requested)

*Attorneys for Plaintiff*